**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JUDGE KOCORAS

| | |
|---|---|
| LOUIS AMOROSO, | ) |
| Plaintiff, | ) |
| | ) **02C 1453** |
| v. | ) No. |
| | ) MAGISTRATE JUDGE NOLAN |
| CRESCENT PRIVATE CAPITAL, L.P., a | ) |
| Delaware limited partnership, NANCY AMER, | ) |
| HUGH O'DONNELL, WASSERSTEIN | ) |
| ADELSON VENTURES, L.P., a Delaware limited | ) |
| partnership, TOWNSEND ZIEBOLD, TOM | ) |
| HUANG, SWANDER PACE CAPITAL, LLC, | ) |
| a Delaware limited liability company, BILL | ) |
| PACE, SCOTT SELLERS, THE CIT | ) |
| GROUP/VENTURE CAPITAL, INC., n/k/a | ) |
| TYCO CAPITOL, a Delaware corporation, | ) |
| ED BURNS, and MARK VANDER VEEN, | ) |
| | ) |
| Defendants. | ) |

DOCKETED

FEB 2 8 2002

**COMPLAINT FOR "FINAL COMPENSATION" UNDER THE WAGE
PAYMENT AND COLLECTION ACT (820 ILCS 115/1 et seq.), ATTORNEYS'
FEES AND PUNITIVE DAMAGES**

Plaintiff, LOUIS AMOROSO ("Amoroso"), by his attorneys, O'Rourke

McCloskey & Moody, and for his complaint against the Defendants for "final

compensation" under the Wage Payment and Collection Act (820 ILCS 115/1 et seq.)

(West 2001), attorneys' fees, and punitive damages, states as follows:

**Statement of the Case**

1.      Amoroso was the President of Drinks.com, Inc. ("Drinks") from July 1,

1999 up to and including January 19, 2001 when he left Drinks. Amoroso has not been

paid his full salary, earned vacation pay, and out of pocket expenses he incurred while

employed at Drinks, despite the fact that all other Drinks' employees, including corporate

1

officers, were paid in December, 2000 by the active investors of Drinks. These active investors, described more fully infra, are liable to Amoroso under the Wage Payment and Collection Act (820 ILCS 115/1 et seq.) (West 1993) as "employers" or as "agents of the employer." These active investors, some of which were Drinks' board members, are named as Defendants in this complaint.

### Parties, Jurisdiction and Venue

2.      Plaintiff Louis Amoroso ("Amoroso") is an individual residing in North Barrington, Illinois and at all relevant times was the President of Drinks.

3.      Defendant Crescent Private Capital, L.P. ("Crescent") is a Delaware limited partnership with its principal place of business located at One Copley Place, Boston, Massachusetts 02116 and was one of Drinks' active investors.

4.      Defendant Hugh O'Donnell ("O'Donnell") is an individual who was a board member of Drinks, was employed by defendant Crescent, and was one of Drinks' active investors. On information and belief, O'Donnell resides in Massachusetts.

5.      Defendant Nancy Amer ("Amer") is an individual who was a board member of Drinks, was employed by defendant Crescent, and was one of Drinks' active investors. On information and belief, O'Donnell resides in Massachusetts.

6.      Defendant Wasserstein Adelson Venures, L.P. ("Wasserstein") is, on information and belief a Delaware limited partnership with its principal place of business located at 320 Park Avenue, 14th Floor, New York, New York, 10022 and was one of Drinks' active investors.

7.      Defendant Townsend Ziebold ("Ziebold") is an individual who was a board member of Drinks, on information and belief, in the president of Wasserstein, and

was one of Drinks' active investors. On information and belief, Ziebold resides in New York.

8.     Defendant Tom Huang ("Huang") is an individual who was employed by Wasserstein, who caused Drinks' final payroll to be filed, and was one of Drinks' active investors. On information and belief, Huang resides in New York.

9.     Defendant Swander Pace Capital, LLC ("Swander") is a Delaware limited liability company with its principal place of business located at 345 California Street, Suite 2550, San Francisco, California 94104 and was one of Drinks' active investors.

10.    Defendant Bill Pace ("Pace") is an individual who was a board member of Drinks, was employed by defendant Swander, and was one of Drinks' active investors. On information and belief, Swander resides in California.

11.    Defendant Scott Sellers ("Sellers") is an individual who was employed by Swander, was present at most of the board meeting and conference calls, and was one of Drinks' active investors. On information and belief, Sellers resides in California.

12.    Defendant The CIT Group/Venture Capital, Inc. n/k/a Tyco Capitol ("CIT Group) is, on information and belief, a Delaware corporation with its principal place of business located at 1 Tyco Drive, Livingston, New Jersey 07039 and was one of Drinks' active investors.

13.    Defendant Ed Burns ("Burns") is an individual who was employed by the CIT Group, was present at most of the board meeting and conference calls, and was one of Drinks' active investors. On information and belief, Burns resides in New Jersey.

14.    Defendant Mark Vander Veen ("Vander Veen") is an individual who was employed by the CIT Group, was present at most of the board meeting and conference

calls, and was one of Drinks' active investors. On information and belief, Vander Veen resides in New Jersey.

15.    Subject matter jurisdiction is based on 28 U.S.C. § 1332(a) in that the amount in controversy exceeds the sum of $75,000.00 exclusive of costs and interest and is between citizens of different states. Personal jurisdiction is based on 735 ILCS 5/2-209(a)(1), (2) and (12) (West 2001) in that the aforementioned defendants actively participated in the financing and management of Drinks through means of interstate communications and failed to pay Amoroso his "final compensation" which is a statutory violation under the Illinois Wage Payment and Collection Act (occasionally cited as the "WPCA") (820 ILCS 115/1 et seq.).

16.    Venue is based upon 28 U.S.C. § 1391(a)(2) in that a substantial part of the events giving rise to this claim occurred within this judicial district.

## Facts Common to All Counts

### A.    Background

17.    Between July 1, 1999 and January 19, 2001, Amoroso was employed at Drinks as President. He was duly elected by Drinks' board of directors. The board of directors consisted of Nancy Amer, Hugh O'Donnell, Townsend Ziebold, Bill Pace, Todd Holmes (not one of the Active Investors), and Louis Amoroso.

18.    Drinks' principal place of business was located at 55 Albrecht Drive, Lake Bluff, Illinois 60044. Drinks was engaged in the business of e-commerce marketing of beer, wine and spirits. Amoroso' annual salary was fixed at $175,000.00.

19.    As President of Drinks, Amoroso's responsibilities included, but were not limited to, the hiring and termination of employees, reporting to the board of directors,

carrying out the board's direction for the company, creating budgets for board approval, salary approvals, possible acquisitions and raising money for the company.

20.     Between July, 1999 and September, 2000, Amoroso met with the board of directors once a month. The board set the direction of Drinks and instructed Amoroso on carrying out the day-to-day affairs of Drinks.

21.     Between September, 2000 and November, 2000, the active investors (some of which were also board members) determined that Drinks should try and merge with eVineyard in an attempt to get more cash into the company. Amoroso carried out all of their directions in regards to getting the merger done. The merger "died" in approximately November, 2000.

22.     Between September, 2000 and November, 2000, due to a cash shortfall that the merger tried to solve, Drinks' employees were terminated. On information and belief, at least twenty wage claims were filed with the Illinois Department of Labor. From September, 2000 until January 19, 2001, Drinks's active investors took over the day-to-day management of Drinks. The active investors consisted of the companies and individuals described in paragraphs 3. - 14, supra. (collectively, the "Active Investors"). (See Exhibit A)

23.     During this time, Amoroso had very little control over the day-to-day management of Drinks. The Active Investors and Amoroso had daily telephone conferences. Specifically, Amoroso and the Active Investors discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." The Active Investors told Amoroso exactly what to do regarding Drink's business operations and Amoroso carried out their directions.  For instance, Amoroso was instructed to "shut down" Drinks,

work with Drinks' attorneys to get personnel their paychecks, and work with the auditors and investors to make sure there was no misappropriation of funds.

24.     In December, 2000, the Active Investors filed the final payroll through a company called Compucount Systems, Inc. (See Exhibit B) This payroll paid all of Drinks' employees except Amoroso. As a result of the payroll being filed, on information and belief, the wage claims filed by Drinks' employees became a nullity.

**B.     Earned and Unpaid Salary**

25.     Drinks failed to properly compensate Amoroso between September 29, 2000 and January 19, 2001. For that period, Amoroso should have been paid $60,576.93. Amoroso was only paid $14,249.88. Accordingly, Amoroso is owed salary in the amount of $46,327.05.

**C.     Vacation Pay**

26.     Additionally, Amoroso earned vacation pay while employed at Drinks. As part of his compensation package at Drinks, Amoroso had 160 annual vacation hours in a year. The vacation pay formula is set the same for every employee at Drinks. Amoroso was employed by Drinks for 568 days. This amounts to 1.56 years of service (viz. 568 days divided by 365 days = 1.56 years of vacation). 1.56 years of accrued vacation multiplied by 160 vacation hours in a year equals 249.6 accrued vacation hours. Amoroso used 32 vacation hours out of a possible 249.6 accrued vacation hours. This leaves 217.6 accrued vacation hours. There are 2,080 work hours in a year at Drinks. Amoroso's annual salary (viz. $175,000.00) is divided by 2,080 work hours. That number is then multiplied by 217.6 accrued vacation hours which comes to $18,306.68 in unpaid vacation pay which is due and owing to Amoroso. (See Exhibit C)

**D.**     **Out of Pocket Expenses**

27.     Amoroso has $18,341.00 is out of pocket expenses relating carrying out his obligations within the scope of his employment. $13,808.03 is substantiated in Exhibit D. Amoroso will substantiate the remaining amounts at trial.

**Count I - Crescent Private Capital, LP**
**(820 ILCS 115/1 et seq.)**

28.     Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

29.     When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

30.     An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

31.     From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, including Crescent Private Capital, LP ("Crescent"), directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, Crescent met daily with Amoroso regarding the management of Drinks. Crescent set the agenda and Amoroso, with little or no control at this point, carried out its agenda. Specifically, Amoroso and Crescent discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, Crescent also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

32.     Crescent knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

33.     Section 13 of the WPCA provides:

> Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

34.     The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the … employer." (See 56 Ill. Admin. Code § 300.620).

35.     From September, 2000 through January, 2001, Drinks allowed Crescent to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instances, Crescent and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, Crescent instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated. In essence, Crescent became one of Drink's *de facto* board of directors and managed Drinks' affairs.

36.     Amoroso reasonably relied upon Crescent's authority to act on behalf of Drinks and carried out its directives. Based on its level of involvement in Drinks' affairs, Crescent knew or should have known that Drinks could not pay its employees even though it directed Amoroso to do so. When Drinks could not cover its financial

obligations to its employees from September, 2000 to November, 2000, Crescent did nothing until December, 2000 when it caused the final payroll to be filed. (See Exhibit B)

37.     Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

38.     The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

39.     Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Crescent.

40.     Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an … agreement between the 2 parties." See 820 ILCS 115/2

41.     Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

42.     The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

43.     Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Crescent owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against CRESCENT PRIVATE CAPITAL, LP in an amount in excess of $82,000.00, plus pre-judgment interest pursuant to 815 ILCS 205/2, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

### Count II - Hugh O'Donnell
### (820 ILCS 115/1 et seq.)

44.    Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

45.    When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

46.    An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

47.    From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, High O'Donnell ("O'Donnell") met daily with Amoroso regarding the management of Drinks. O'Donnell set the agenda and Amoroso, with little or no control at this point, carried out his agenda. Specifically, Amoroso and O'Donnell discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, O'Donnell also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

48.     O'Donnell knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

49.     Section 13 of the WPCA provides:

Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

50.     The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the ... employer." (See 56 Ill. Admin. Code § 300.620).

51.     From September, 2000 through January, 2001, Drinks allowed O'Donnell to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instance, O'Donnell and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, O'Donnell instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated.

52.     Amoroso reasonably relied upon O'Donnell's authority to act on behalf of Drinks and carried out his directives. Based on his level of involvement in Drinks' affairs, O'Donnell knew or should have known that Drinks could not pay its employees even though he directed Amoroso to do so. When Drinks could not cover its financial obligations to its employees from September, 2000 to November, 2000, O'Donnell did

nothing until December, 2000 when he caused the final payroll to be filed. (See Exhibit B)

53.     Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

54.     The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

55.     Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by O'Donnell.

56.     Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an … agreement between the 2 parties." See 820 ILCS 115/2

57.     Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

58.     The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

59.     Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, O'Donnell owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against HUGH O'DONNELL in an amount in excess of $82,000.00, plus pre-judgment interest pursuant to 815 ILCS 205/2, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

### Count III - Nancy Amer
### (820 ILCS 115/1 et seq.)

60.     Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

61.     When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

62.     An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

63.     From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, Nancy Amer ("Amer") met daily with Amoroso regarding the management of Drinks. Amer set the agenda and Amoroso, with little or no control at this point, carried out her agenda. Specifically, Amoroso and Amer discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, Amer also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

64.     Amer knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

65.     Section 13 of the WPCA provides:

> Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

66.     The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the … employer." (See 56 Ill. Admin. Code § 300.620).

67.     From September, 2000 through January, 2001, Drinks allowed Amer to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instance, Amer and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, Amer instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated.

68.     Amoroso reasonably relied upon Amer's authority to act on behalf of Drinks and carried out her directives. Based on her level of involvement in Drinks' affairs, Amer knew or should have known that Drinks could not pay its employees even though she directed Amoroso to do so. When Drinks could not cover its financial obligations to its employees from September, 2000 to November, 2000, Amer did

nothing until December, 2000 when she caused the final payroll to be filed. (See Exhibit B)

69.     Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

70.     The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

71.     Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Amer.

72.     Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an ... agreement between the 2 parties." See 820 ILCS 115/2

73.     Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

74.     The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

75.     Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Amer owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against NANCY AMER in an amount in excess of $82,000.00, plus pre-judgment interest pursuant to 815 ILCS 205/2, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

### Count IV - Wasserstein Adelson Ventures, L.P.
### (820 ILCS 115/1 et seq.)

76.     Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

77.     When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

78.     An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

79.     From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, including Wasserstein Adelson Ventures, L.P. ("Wasserstein") directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, Wasserstein met daily with Amoroso regarding the management of Drinks. Wasserstein set the agenda and Amoroso, with little or no control at this point, carried out their agenda. Specifically, Amoroso and Wasserstein discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, Wasserstein also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

80. Wasserstein knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

81. Section 13 of the WPCA provides:

> Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

82. The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the ... employer." (See 56 Ill. Admin. Code § 300.620).

83. From September, 2000 through January, 2001, Drinks allowed Wasserstein to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instance, Wasserstein and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, Wasserstein instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated. In essence, Wasserstein became Drink's *de facto* board of directors and managed Drinks' affairs.

84. Amoroso reasonably relied upon Wasserstein's authority to act on behalf of Drinks and carried out its directives. Based on its level of involvement in Drinks' affairs, Wasserstein knew or should have known that Drinks could not pay its employees even though it directed Amoroso to do so. When Drinks could not cover its financial

obligations to its employees from September, 2000 to November, 2000, Wasserstein did nothing until December, 2000 when it caused the final payroll to be filed. (See Exhibit B)

85.     Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

86.     The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

87.     Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Wasserstein.

88.     Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an ... agreement between the 2 parties." See 820 ILCS 115/2

89.     Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

90.     The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

91.     Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Wasserstein owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against WASSERSTEIN ADELSON VENTURES, L.P., in an amount in excess of $82,000.00, plus pre-judgment interest pursuant to 815 ILCS 205/2, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

## Count V - Townsend Ziebold
### (820 ILCS 115/1 et seq.)

92.     Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

93.     When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

94.     An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

95.     From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, Townsend Ziebold ("Ziebold") met daily with Amoroso regarding the management of Drinks. Ziebold set the agenda and Amoroso, with little or no control at this point, carried out his agenda. Specifically, Amoroso and Ziebold discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, Ziebold also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

96.    Ziebold knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

97.    Section 13 of the WPCA provides:

> Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

98.    The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the ... employer." (See 56 Ill. Admin. Code § 300.620).

99.    From September, 2000 through January, 2001, Drinks allowed Ziebold to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instance, Ziebold and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, Ziebold instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated.

100.    Amoroso reasonably relied upon Ziebold's authority to act on behalf of Drinks and carried out his directives. Based on his level of involvement in Drinks' affairs, Ziebold knew or should have known that Drinks could not pay its employees even though he directed Amoroso to do so. When Drinks could not cover its financial obligations to its

employees from September, 2000 to November, 2000, Ziebold did nothing until December, 2000 when he caused the final payroll to be filed. (See Exhibit B)

101.    Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

102.    The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

103.    Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Ziebold.

104.    Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an … agreement between the 2 parties." See 820 ILCS 115/2

105.    Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

106.    The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

107.    Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Ziebold owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against TOWNSEND ZIEBOLD in an amount in excess of $82,000.00, plus pre-judgment interest pursuant to 815 ILCS 205/2, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

### Count VI - Thomas Huang
### (820 ILCS 115/1 et seq.)

108.    Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

109.    When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

110.    An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

111.    Thomas Huang ("Huang") caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

112.    Huang knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

113.    Section 13 of the WPCA provides:

Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

114.    The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the ... employer." (See 56 Ill. Admin. Code § 300.620).

115.    From September, 2000 through January, 2001, Drinks allowed the Active Investors to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instance, the Active Investors and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, the Active Investors instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated.

116.    Amoroso reasonably relied upon the Active Investors' authority to act on behalf of Drinks and carried out their directives. Based on his level of involvement in Drinks' affairs, Huang knew or should have known that Drinks could not pay its employees even though it directed Amoroso to do so. When Drinks could not cover its financial obligations to its employees from September, 2000 to November, 2000, Huang did nothing until December, 2000 when he caused the final payroll to be filed. (See Exhibit B)

117.    Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

118.    The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

119.    Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6

vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Huang.

120.    Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an ... agreement between the 2 parties." See 820 ILCS 115/2

121.    Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

122.    The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

123.    Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Huang owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against THOMAS HUANG in an amount in excess of $82,000.00, plus pre-judgment interest pursuant to 815 ILCS 205/2, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

### Count VII - Swander Pace Capital, LLC
### (820 ILCS 115/1 et seq.)

124.    Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

125.    When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

126.    An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

127.    From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, including Swander Pace Capital, LLC ("Swander") directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, Swander met daily with Amoroso regarding the management of Drinks. Swander set the agenda and Amoroso, with little or no control at this point, carried out its agenda. Specifically, Amoroso and Swander discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, Swander also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

128.    Swander knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

129.    Section 13 of the WPCA provides:

Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

130.    The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the ... employer." (See 56 Ill. Admin. Code § 300.620).

131.    From September, 2000 through January, 2001, Drinks allowed Swander to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instance, Swander and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, Swander instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated. In essence, Swander became Drink's *de facto* board of directors and managed Drinks' affairs.

132.    Amoroso reasonably relied upon Swander's authority to act on behalf of Drinks and carried out its directives. Based on its level of involvement in Drinks' affairs, Swander knew or should have known that Drinks could not pay its employees even though it directed Amoroso to do so. When Drinks could not cover its financial obligations to its employees from September, 2000 to November, 2000, Swander did nothing until December, 2000 when it caused the final payroll to be filed. (See Exhibit B)

133.    Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

134.    The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

135.    Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Swander.

136.    Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an ... agreement between the 2 parties." See 820 ILCS 115/2

137.    Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

138.    The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

139.    Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Swander owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against SWANDER PACE CAPITAL, LLC in an amount in excess of $82,000.00, plus pre-judgment interest pursuant to 815 ILCS 205/2, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

**Count VIII - Bill Pace**
**(820 ILCS 115/1 et seq.)**

140.    Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

141.    When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

142.    An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

143.    From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, Bill Pace ("Pace") met daily with Amoroso regarding the management of Drinks. Pace set the agenda and Amoroso, with little or no control at this point, carried out his agenda. Specifically, Amoroso and Pace discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, Pace also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

144.    Pace knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

145.    Section 13 of the WPCA provides:

> Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

146.    The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the ... employer." (See 56 Ill. Admin. Code § 300.620).

147.    From September, 2000 through January, 2001, Drinks allowed Pace to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instance, Pace and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, Pace instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated.

148.    Amoroso reasonably relied upon Pace's authority to act on behalf of Drinks and carried out his directives. Based on his level of involvement in Drinks' affairs, Pace knew or should have known that Drinks could not pay its employees even though he directed Amoroso to do so. When Drinks could not cover its financial obligations to its employees from September, 2000 to November, 2000, Pace did nothing until December, 2000 when he caused the final payroll to be filed. (See Exhibit B)

149.    Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

150.    The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

151.    Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Pace.

152.    Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an … agreement between the 2 parties." See 820 ILCS 115/2

153.    Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

154.    The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

155.    Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Pace owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against BILL PACE in an amount in excess of $82,000.00, plus pre-judgment interest pursuant to 815 ILCS 205/2 interest, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

## Count IX - Scott Sellers
## (820 ILCS 115/1 et seq.)

156.    Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

157.    When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

158.    An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

159.    From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, Scott Sellers ("Sellers") met daily with Amoroso regarding the management of Drinks. Sellers set the agenda and Amoroso, with little or no control at this point, carried out his agenda. Specifically, Amoroso and Sellers discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, Sellers also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

160.    Sellers knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

161.    Section 13 of the WPCA provides:

> Any officers of a corporation or *agents of the employer* who knowingly permit
> such employer to violate the provisions of this Act shall be deemed to be the
> employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

162.    The Illinois Administrative Code states that an agent of the employer may
be personally liable under section 13 when the agent "actively assert[s] substantial
control over the management and financial affairs of the ... employer." (See 56 Ill.
Admin. Code § 300.620).

163.    From September, 2000 through January, 2001, Drinks allowed Sellers to
exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial
obligations. For instance, Sellers and Amoroso met on a daily basis to discuss the
direction of Drinks. Specifically, Sellers instructed Amoroso to "shut down" Drinks, get
Drinks' personnel their checks, and work with the auditors and investors to insure no
funds were being misappropriated.

164.    Amoroso reasonably relied upon Seller's authority to act on behalf of
Drinks and carried out his directives. Based on his level of involvement in Drinks' affairs,
Sellers knew or should have known that Drinks could not pay its employees even though
he directed Amoroso to do so. When Drinks could not cover its financial obligations to its
employees from September, 2000 to November, 2000, Sellers did nothing until
December, 2000 when he caused the final payroll to be filed. (See Exhibit B)

165.    Section 5 of the WPCA provides for an employee to obtain the monetary
equivalent of all earned vacation. (See 820 ILCS 115/5)

166.    The agreement between Drinks and Amoroso provided 160 annual
vacation hours in a year. (See Exhibit C)

167.    Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Sellers.

168.    Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an ... agreement between the 2 parties." See 820 ILCS 115/2

169.    Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

170.    The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

171.    Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Sellers owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against SCOTT SELLERS in an amount in excess of $82,000.00, plus pre-judgment interest pursuant to 815 ILCS 205/2 interest, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

## Count X - The CIT Group/Venture Capital, Inc., n/k/a Tyco Capitol
### (820 ILCS 115/1 et seq.)

172.     Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

173.     When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

174.     An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

175.     From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, including The CIT Group/Venture Capital, Inc., n/k/a Tyco Capitol ("Tyco") directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, Tyco met daily with Amoroso regarding the management of Drinks. Tyco set the agenda and Amoroso, with little or no control at this point, carried out its agenda. Specifically, Amoroso and Tyco discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, Tyco also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

176.     Tyco knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

177.    Section 13 of the WPCA provides:

Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

178.    The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the ... employer." (See 56 Ill. Admin. Code § 300.620).

179.    From September, 2000 through January, 2001, Drinks allowed Tyco to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instance, Tyco and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, Tyco instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated. In essence, Tyco became Drink's *de facto* board of directors and managed Drinks' affairs.

180.    Amoroso reasonably relied upon Tyco's authority to act on behalf of Drinks and carried out its directives. Based on its level of involvement in Drinks' affairs, Tyco knew or should have known that Drinks could not pay its employees even though it directed Amoroso to do so. When Drinks could not cover its financial obligations to its employees from September, 2000 to November, 2000, Tyco did nothing until December, 2000 when it caused the final payroll to be filed. (See Exhibit B)

181.    Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

182.    The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

183.    Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Tyco.

184.    Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an ... agreement between the 2 parties." See 820 ILCS 115/2

185.    Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

186.    The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

187.    Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Tyco owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against THE CIT GROUP/VENTURE CAPITAL, INC., n/k/a TYCO CAPITOL in an amount in excess of $82,000.00, plus pre-judgment interest pursuant to

815 ILCS 205/2, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

## Count XI - Ed Burns
## (820 ILCS 115/1 et seq.)

188.    Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

189.    When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

190.    An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

191.    From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, Ed Burns ("Burns") met daily with Amoroso regarding the management of Drinks. Burns set the agenda and Amoroso, with little or no control at this point, carried out his agenda. Specifically, Amoroso and Burns discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, Burns also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

192.    Burns knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking

their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

193.    Section 13 of the WPCA provides:

> Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

194.    The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the ... employer." (See 56 Ill. Admin. Code § 300.620).

195.    From September, 2000 through January, 2001, Drinks allowed Burns to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instance, Burns and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, Burns instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated.

196.    Amoroso reasonably relied upon Burns' authority to act on behalf of Drinks and carried out his directives. Based on his level of involvement in Drinks' affairs, Burns knew or should have known that Drinks could not pay its employees even though he directed Amoroso to do so. When Drinks could not cover its financial obligations to its employees from September, 2000 to November, 2000, Burns did nothing until December, 2000 when he caused the final payroll to be filed. (See Exhibit B)

197.   Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

198.   The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

199.   Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Burns.

200.   Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an ... agreement between the 2 parties." See 820 ILCS 115/2

201.   Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

202.   The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

203.   Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Burns owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against ED BURNS in an amount in excess of $82,000.00, plus pre-

judgment interest pursuant to 815 ILCS 205/2 interest, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

### Count XII - Mark Vander Veen
### (820 ILCS 115/1 et seq.)

204.    Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 27. as if fully stated herein.

205.    When Amoroso left Drinks on January 19, 2001, he did not receive his "final compensation" then or at the next regularly scheduled payday.

206.    An employer must pay an employee all amounts due at the time of termination or by its next regular payday. 820 ILCS115/5.

207.    From September, 2000 up to and including January 19, 2001, Drinks' Active Investors, directed the day-to-day affairs of Drinks, including but not limited to, trying to push through a merger with eVineyard in order to solve Drinks' cash flow problem. The merger "died," Drinks was suffering financially, and the Active Investors were scrambling to make "ends meat" out of their investment in Drinks. Moreover, during this same time, Mark Vander Veen ("Vander Veen") met daily with Amoroso regarding the management of Drinks. Vander Veen set the agenda and Amoroso, with little or no control at this point, carried out his agenda. Specifically, Amoroso and Vander Veen discussed Amoroso's salary and all parties agreed that he was not working for Drinks "for free." Additionally, Vander Veen also caused to be filed the last payroll in December, 2000 whereby all Drinks' employees, with the exception of Amoroso, were paid their salary.

208.    Vander Veen knew or should have known of the solvency of Drinks since Amoroso was reporting to the board (and also the Active Investors' agents) and seeking

their approvals on such issues as Drinks' budget. Based on Amoroso's input, the board would consequently guide Drinks' direction.

209.   Section 13 of the WPCA provides:

Any officers of a corporation or *agents of the employer* who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

820 ILCS 115/13 (West 1993) (Emphasis added)

210.   The Illinois Administrative Code states that an agent of the employer may be personally liable under section 13 when the agent "actively assert[s] substantial control over the management and financial affairs of the ... employer." (See 56 Ill. Admin. Code § 300.620).

211.   From September, 2000 through January, 2001, Drinks allowed Vander Veen to exert substantial control over the day-to-day affairs of Drinks, including Drinks' financial obligations. For instance, Vander Veen and Amoroso met on a daily basis to discuss the direction of Drinks. Specifically, Vander Veen instructed Amoroso to "shut down" Drinks, get Drinks' personnel their checks, and work with the auditors and investors to insure no funds were being misappropriated.

212.   Amoroso reasonably relied upon Vander Veen's authority to act on behalf of Drinks and carried out his directives. Based on his level of involvement in Drinks' affairs, Vander Veen knew or should have known that Drinks could not pay its employees even though he directed Amoroso to do so. When Drinks could not cover its financial obligations to its employees from September, 2000 to November, 2000, Vander Veen did nothing until December, 2000 when he caused the final payroll to be filed. (See Exhibit B)

213.    Section 5 of the WPCA provides for an employee to obtain the monetary equivalent of all earned vacation. (See 820 ILCS 115/5)

214.    The agreement between Drinks and Amoroso provided 160 annual vacation hours in a year. (See Exhibit C)

215.    Amoroso had 1.56 years of vacation. (Id.) When calculated, Amoroso had 249.6 accrued vacation hours. (Id.) He used 32 vacation hours, leaving a balance of 217.6 vacation hours. (Id.) Amoroso's salary (viz. $175,000.00 per year) is divided by the number of work hours in a year (viz. 2080 work hours). (Id.) This comes to $84.13/hour. (Id.) 217.6 vacation hours multiplied by $84.13/hours equals $18,306.68 in earned and unused vacation pay. Accordingly, Amoroso is owed $18,306.68 in earned and unused vacation pay by Vander Veen.

216.    Under section 2 of the WPCA, "final compensation" includes "any other compensation owed the employee by the employer pursuant to an ... agreement between the 2 parties." See 820 ILCS 115/2

217.    Occasionally, Amoroso, while acting within the scope of his employment, incurred out of pocket expenses on behalf of Drinks.

218.    The policy at Drinks was to submit demands for reimbursements for any out of pocket expenses.

219.    Amoroso incurred $18,341.00 in out of pocket expenses which were not reimbursed by Drinks. Accordingly, Vander Veen owes Amoroso $18,341.00 representing Amoroso's out of pocket expenses.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully request judgement in his favor and against MARK VANDER VEEN in an amount in excess of $82,000.00,

plus pre-judgment interest pursuant to 815 ILCS 205/2 interest, plus costs and fees of suit, plus all other relief this Court deems equitable and just.

### Count XIII - Special Damages (Attorneys' Fees)
### (Against All Defendants)

220.     Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 219. as if fully stated herein.

221.     As a natural and proximate result of Defendants conduct as aforementioned, Plaintiff had to file a wage claim with the Illinois Department of Labor, wage claim no. 01-000810, to recover all monies due and owing to him as "final compensation" under the Illinois Wage Payment and Collection Act.

222.     As a result of the wage claim filing, Plaintiff retained attorneys to prosecute his claim and incurred fees due and owing to his attorneys.

223.     The Illinois Department of Labor denied the wage claim but indicated his right to file a private cause of action.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully requests that this Court enter judgment in his favor and against Defendants for all attorneys' fees and costs he incurred in the prosecution of his wage claim with the Illinois Department of Labor, said amount to be proved at trial, plus pre-judgment interest, and all other relief this Court deems equitable and just.

### Count XIV - Special Damages (Punitive Damages)
### (Against All Defendants)

224.     Plaintiff adopts and incorporates by reference the allegations of paragraphs 1. - 219. as if fully stated herein.

225.    Despite Plaintiff's and Defendants' conversations that Plaintiff was not working for Drinks' "for free" and despite the fact that all other Drinks' employees were fully compensated by Defendants, Defendants failed to pay Plaintiff his "final compensation" as statutorily required.

226.    Defendants offered no plausible explanation for compensating the rest of Drinks' employees, some of which included corporate officers, and not Plaintiff.

227.    Defendants, who had much financial stake in Drinks, were upset that Drinks was becoming insolvent and shifted the blame upon Plaintiff who was Drinks' president.

228.    In a final attempt to enact revenge upon Plaintiff, Defendants willfully, maliciously, deliberately, recklessly, and with complete indifference to Plaintiff's rights, statutory and otherwise, failed to fully and finally compensate Plaintiff for his dedicated service to Drinks.

229.    To this day, Defendants have made no attempt to even partially compensate Plaintiff.

WHEREFORE, plaintiff, LOUIS AMOROSO, respectfully requests that this Court award him punitive damages against the Defendants equal to three (3) times his "final compensation," said amount to be proved at trial, plus all other relief this Court deems equitable and just.

Respectfully submitted,

LOUIS AMOROSO,

By: _Brian M. Daughty_____
His Attorneys

Brian M. Dougherty
O'ROURKE MCCLOSKEY & MOODY
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020

Exhibit A

# Drinks, Inc.
## Active Investors

| Name | Company | Address | Phone | Fax | Cell | E-Mail Address |
|------|---------|---------|-------|-----|------|----------------|
| Nancy Amer | Crescent Private Capital | One Copley Place Suite 602 Boston, MA 02116 | (617) 638-0051 | (617) 638-0090 | (617) 901-6799 | nancy@crescentlp.com |
| Hugh O'Donnell | Crescent Private Capital | One Copley Place Suite 602 Boston, MA 02116 | (617) 638-0052 | (617) 638-0090 | (617) 834-4916 | hugh@crescentlp.com |
| Townsend Ziebold | Wasserstein Perella Venture Capital | 320 Park Avenue 14th Floor New York, NY 10022 | (212) 702-5692 | (212) 702-5635 | (917) 941-1987 | tz@wasserella.corr |
| Bill Pace | Swander Pace Capital | 345 California Street Suite 2500 San Francisco, CA 94104 | (415) 296-9200 x721 | (415) 397-2836 | (415) 517-5330 | bpace@swanderpace.com |
| Ed Burns | The CIT Group | 44 Whippany Road Suite 140 Morristown, NJ 07960 | (973) 401-6707 | (973) 401-6777 | (973) 722-5324 | eburns2@citgroup.com |
| Mark Vander Veen | The CIT Group | 44 Whippany Road Suite 140 Morristown, NJ 07960 | (973) 401-6705 | (973) 401-6777 | (973) 610-3772 | mvanderveen@citgroup.com |
| Scott Sellers | Swander Pace Capital | 345 California Street Suite 2500 San Francisco, CA 94104 | (415) 477-8500 x773 | (415) 477-8510 | (415) 596-6919 | sellers@spcap.com |
| Tom Huang | Wasserstein Perella Venture Capital | 320 Park Avenue 14th Floor New York, NY 10022 | (212) 702-5697 | (212) 702-5635 | (917) 597-1192 | Thomas_huang@wasserella.com |

1

Exhibit A



Blumberg No. 5137

Exhibit B



**COMPUCOUNT**
SYSTEMS, INC.

*Computer Consulting, Payroll and Data Processing*

January 26, 2001

Mr. Thomas Ibsen Huang
Wasserstein Adelson Ventures, L.P.
Drinks.com
1301 Avenue of the Americas
44th Floor
New York, NY 10019

Re: Payroll Tax Returns for the
Quarter Ended December 31, 2000

Dear Tom:

Enclosed are the originals and a copy of each of the following returns. Each form is to be signed by an officer, dated and mailed in the attached pre-addressed envelope. Thus executed, the returns are to be handled as follows:

1. Form 941 (Federal) is to be mailed without remittance to the Internal Revenue Service.

2. Form IL-941 (Illinois) is to be mailed without remittance to the Illinois Department of Revenue.

3. Form UC/3 is to be mailed with a check payable to the Illinois Director of Employment Security in the amount of $192.70.

4. Form 940EZ is to be mailed without remittance to the Internal Revenue Service.

5. Form CADE61 (California Unemployment) is to be mailed without remittance to the State of California.

6. Form CADE7X1 (California Reconciliation) is to be mailed without remittance to the State of California.

7. Form CT-941 (Connecticut Reconciliation) is to be mailed without remittance to the Department of Revenue Services.

8. Form CT-W3 (Annual Reconciliation) is to be mailed without remittance to the Department of Revenue Services.

9. Form CTUC21 (Connecticut UC) is to be mailed without remittance to the State of Connecticut.

10. Form PAW3R1 (Quarterly Reconciliation) is to be mailed without remittance to the Pennsylvania Department of Revenue.

Exhibit
B

Bloomberg No. 5137

11. Form PA2Q31 (Unemployment) is to be mailed without remittance to the Pennsylvania Dept. of Labor & Industry.

12. Form WI1011 (Unemployment) is to be mailed without remittance to the Department of Workforce Development.

13. Form WIWT71 (Annual Reconciliation) is to be mailed with a check payable to the Wisconsin Department of Revenue in the amount of $117.61.

14. Form NYS-45 (Quarterly Withholding/Unemployment) is to be mailed with a check payable to the NYS Employment Taxes in the amount of $465.33.

15. Form NJ-927-W (Quarterly Withholding/Unemployment) is to be mailed with a check payable to the State of New Jersey in the amount of $756.55.

16. Form NJ-W-3M (Annual Reconciliation) is to be mailed without remittance to the State of New Jersey.

17. Form IL W-3 (Annual Reconciliation) is to be mailed without remittance to the Illinois Department of Revenue.

18. Form W-3 (Federal Annual Reconciliation) is to be mailed without remittance to the Social Security Administration.

These items must be attended to any time prior to January 31, 2001. If you have any questions, please contact me.

Very truly yours,

Amy Schwartz

AS/sb/payroll/enc.

Exhibit C

## Vacation Pay Calculation

Vacation pay due to Louis Amoroso is calculated as follows:

1.     From July 1, 1999 (when Louis Amoroso started at Drinks.com) through January 19, 2001 (which is Louis Amoroso's last day at Drinks.com) is 568 days;

2.     Louis Amoroso has 160 annual vacation hours per year;

3.     568 days divided by 365 days  = 1.56 years of vacation

4.     1.56 years of accrued vacation * 160 hours in a year = 249.6 accrued vacation hours;

5.     249.6 accrued vacation hours - 32 vacation hours taken = 217.6 accrued vacation hours;

6.     217.6 accrued vacation hours * ($175,000 / 2080 work hours in a year) = $18,306.68 in accrued and unpaid vacation pay.



Exhibit D

Employee Name:   Louis A. Amoroso II
Expense report date: 1/06 thru 11/10/00
Credit Card:   Citibank Gold

| Amount | Airfare | Meals | Entertainment | Entertainment Detail | Gas | O'Hare Parking | March of Dimes Gift | Phone | Finance Charges | Car Payment | Limo |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6-Oct | | | | | | | | | | | |
| 9-Oct | | 34.00 | | | | | | | | | |
| 14-Oct | | | 201.40 | Lunch w/DRINKS.com employees laid off. | 37.58 | | | | | | |
| 17-Oct | | | | Lunch Meeting w/DRINKS.com employees debriefing company's status. Lunch Meeting w/RGW, Louis Amoroso & Michael | 25.42 | | 1\X00 | | | | 289.00 |
| 18-Oct | | | 84.51 | Binstein. | | | | | | | |
| 19-Oct | 364.00 | | | | | | | | | | |
| 20-Oct | 189.00 | | | | | | | | | | |
| 23-Oct | | | | | | 36.00 | | 58.09 | | | |
| 24-Oct | 304.50 | | | | | | | | | | |
| 26-Oct | 390.00 | | | | 26.79 | | | | | | |
| 27-Oct | | | | | | | | | | | |
| 29-Oct | | 30.99 | | | 57.14 | | | | | | |
| 3-Nov | | | 82.50 | Dinner Meeting to discuss DRINKS.com's status. | | | | | | | |
| 4-Nov | | 26.00 | | | | | | | | | |
| 10-Nov | | | | | | | | | 227.56 | | |
| Oct | | | | | | | | | | 1500 | |
| Nov | | | | | | | | | | 1500 | |
| | | | | | | | | | | | |
| 552327 | 1247.50 | 90.99 | 368.41 | | 146.93 | 36.00 | | 58.09 | 227.56 | 3000 | 289.00 |

Date received: 12/1/00
Acct number: 100000 51/64
Doc number:
Date Paid:
Check #:

5464.88

Exhibit D

Visit www.citibankcards.com

**citi** Citibank

338259476865958999999902540014086

Your Account Number
4271 3 9476 8695

| Payment Must Be Received By | Your Total Balance | Minimum Payment Due | Please Enter Amount Of Payment Enclosed |
|---|---|---|---|
| DEC 05 2000 | $12230.37 | $254.00 | |

256N PA 00 A 2   PR2051051

LOUIS A AMOROSO II
XBEER ACROSS AMERICA
55 ALBRECHT DR
LAKE BLUFF          IL  60044-2226

CITIBANK AADVANTAGE
P.O. BOX 6408
THE LAKES, NV
USA 88901-6408

( )
New Home Phone          ( )
New Business Phone
Please print change of address or phone number above.

# Citibank Gold AAdvantage®

Account Number   A registered trademark of American Airlines, Inc.
4271 3825 9476 8695
Payment must be received by 1:00 pm local time on 12/05/2000

For Customer Service, call or write
1-888-766-CITI (2484)

BOX 6000
THE LAKES, NV
89163-6000

To report billing errors, write to this address; calling will not preserve your rights

| Statement/Closing Date | Total Credit Line | Cash Advance Limit | New Balance | Available Credit Line | Available Cash Limit |
|---|---|---|---|---|---|
| 11/10/2000 | $35000 | $2500 | $12230.37 | $22769 | $2500 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 11/03 | 23678126 | PAYMENT THANK YOU | | | -193.00 |
| 10/06 | 10/12 | 5H37YRNJ | FAMOUS DAVES VERNON HILLS | VERNON HILLS IL | | 201.40 |
| 10/09 | 10/12 | 4ZK4ZBQD | SOUTH GATE CAFE | LAKE FOREST IL | | 34.00 |
| 10/14 | 10/14 | 2RQ39993 | SHELL NO.21220180133 | PALATINE IL | | 57.58 |
| 10/17 | 10/17 | ML8N7CP3 | ARLINGTON LIMOUSINE | 8004216668 IL | | 135.00 |
| 10/17 | 10/17 | GP8N7CP3 | ARLINGTON LIMOUSINE | 8004216668 IL | | 154.00 |
| 10/17 | 10/17 | 3168MVVJ | MARCH OF DIMES | 312-435-4007 IL | | 110.00 |
| 10/17 | 10/17 | 2220JXRP | SHELL NO.21280750114 | VLG HAWTHORN IL | | 25.42 |
| 10/18 | 10/18 | L1Q7YZUE | FLATLANDERS RESTAURANT&BR | LINCOLNSHIRE IL | | 84.51 |
| 10/19 | 10/19 | DV5M2F8K | AMERICAN AIR001712596069S8 | BARRINGTON IL | | -349.00 |
| 10/19 | 10/19 | DV020XYG | AGENT FEE | 89081179465558 BARRINGTON IL | | -15.00 |
| 10/20 | 10/20 | 8YCM2F8K | AMERICAN AIR0017125960595 | BARRINGTON IL | | 174.50 |
| 10/20 | 10/20 | TN009XYG | AGENT FEE | 8908117946553 BARRINGTON IL | | 15.00 |
| 10/23 | 10/23 | DYKXG1SQ | O'HARE PARKNG 00101410 | CHICAGO IL | | 36.00 |
| 10/23 | 10/23 | 2NR41862 | AIRGRD 015M 6178590010 | 800-2476656 NJ | | -58.09 |
| 10/24 | 10/24 | KJ1VJZ7K | AMERICAN AIR0017125960617 | BARRINGTON IL | | -75.00 |
| 10/24 | 10/24 | BJ1VJZ7K | AMERICAN AIR0017125960616 | BARRINGTON IL | | 229.50 |
| 10/26 | 10/26 | K4QH8993 | SHELL NO.21220180135 | PALATINE IL | | 26.79 |
| 10/26 | 10/26 | F5J132YG | AGENT FEE 89081794665 | BARRINGTON IL | | -15.00 |
| 10/26 | 10/26 | LG9PD3VK | UNITED AIR 0167125960485 | BARRINGTON IL | | -375.00 |
| 10/27 | 10/27 | 4XLCLMOD | HOCKTNSON MARKET | BRUSH PRAIRIE WA | | 0.99 |
| 10/29 | 10/29 | N53HOPK3 | SHELL NO 27423623605 | BUFFALO GROVE IL | | -18.54 |
| 10/29 | 10/29 | N53HOPK3 | SHELL NO 2742362360S | BUFFALO GROVE IL | | 57.60 |

Oregon

| | Previous Balance | (+)Purchases & Advances | (-) Payments | (-) Credits | (+)Finance Charge | (+) Late Charges | (=)New Balance | |
|---|---|---|---|---|---|---|---|---|
| Purchases | 9310.93 | 2884.88 | 193.00 | | 227.56 | | 12230.37 | Purchases Minimum Due   254.00 |
| Advances | | | | | | | | Advances Minimum Due |
| | | | | | | | | Amount Over Credit Line |
| Total | 9310.93 | 2884.88 | 193.00 | | 227.56 | | 12230.37 | Fees |
| | | | | | | | | Past Due |
| | | | | | | | | Minimum Amount Due   254.00 |

| Rate Summary | Purchases | Advances | |
|---|---|---|---|
| Number of days this Billing Period  30 | | | |
| Calculation Method | Daily | Daily | |
| Periodic Rate | .06709% | .06709% | |
| Nominal Annual Percentage Rate | 24.490% | 24.490% | |
| Annual Percentage Rate | 24.490% | 24.490% | |
| Balance Subject to Finance Charge | 11306.17 | | |

SEND PAYMENTS TO: CITIBANK AADVANTAGE P.O. BOX 6408 THE LAKES, NV 88901-6408          256N
PLEASE FOLLOW PAYMENT INSTRUCTIONS ON REVERSE SIDE.

Make check or money order payable in U.S. dollars on a U.S. bank to Citibank. Include account number on check or money order. No cash please.

Visit www.citibankcards.com

citi
Citibank

3382594768695999999902540014086

Your Account Number

| Payment Must Be Received By | Your Total Balance | Minimum Payment Due | Please Enter Amount Of Payment Enclosed |
|---|---|---|---|

256N PA  00 A 2      PR2051051

LOUIS A AMOROSO II

## Citibank Gold AAdvantage®

Account Number    A registered trademark of American Airlines, Inc.
4271 3825 9476 8695

For Customer Service, call or write
1-888-766-CITI (2484)

BOX 6000
THE LAKES, NV
89163-6000

To report billing errors, write
to this address; calling will
not preserve your rights

| Statement/Closing Date | Total Credit Line | Cash Advance Limit | New Balance | Available Credit Line | Available Cash Limit |
|---|---|---|---|---|---|
| 11/10/2000 | $35000 | $2500 | $12230.37 | $22769 | $2500 |

| 11/03 | 11/03 | CDH8*BGD | NINE | CHICAGO | IL | 82.50 |
| 11/04 | 11/04 | GFH8*BGD | NINE | CHICAGO | IL | -26.00 |
| | 11/10 | | PURCHASES*FINANCE CHARGE*PERIODIC RATE | | | 227.56 |

```
      *** AADVANTAGE MILES UPDATE ***
   Miles Accumulated This Billing Period:      2,885
   Miles Reported To American Airlines:        2,885


   Our records show home phone 847-382-3068 and
   business phone 847-604-8008.  Please update above
   coupon if incorrect.


   Earn 500 miles with a Gourmet Purchase from
   Mrs. Beasley's of $49.95 + shipping. Try our NEW
   Cookie Village, featuring our latest cookie recipes.
   Visit www.mrsbeasleys.com or call 1-800-710-7742.
   Not Valid with Any Other Offer. Expires 11/30/00.


   Receive your bills online from anywhere.
   With Citibank(R) Bill Manager you receive, review,
   pay, and organize all your bills online. Register
   for Account Online at www.accountonline.com and
   experience Citibank(R) Bill Manager for yourself.
```

| | Previous Balance | (+)Purchases & Advances | (-) Payments | (-) Credits | (+) Finance Charge | (+) Late Charges | (=)New Balance | | |
|---|---|---|---|---|---|---|---|---|---|
| Purchases | 9310.95 | 2884.88 | 193.00 | | 227.56 | | 12230.37 | Purchases Minimum Due | 254.00 |
| Advances | | | | | | | | Advances Minimum Due | |
| | | | | | | | | Amount Over Credit Line | |
| Total | 9310.95 | 2884.88 | 193.00 | | 227.56 | | 12230.37 | Fees | |
| | | | | | | | | Past Due | |
| | | | | | | | | Minimum Amount Due | 254.00 |

| Rate Summary | | Purchases | Advances |
|---|---|---|---|
| Number of days this Billing Period | 30 | | |
| Calculation Method | | Daily | Daily |
| Periodic Rate | | .06709% | .06709% |
| Nominal Annual Percentage Rate | | 24.490% | 24.490% |
| **Annual Percentage Rate** | | 24.490% | 24.490% |
| Balance Subject to Finance Charge | | 11306.17 | |

SEND PAYMENTS TO: CITIBANK AADVANTAGE P.O. BOX 6408 THE LAKES, NV 88901-6408      256H
PLEASE FOLLOW PAYMENT INSTRUCTIONS ON REVERSE SIDE.

Make check or money order payable in U.S. dollars on a U.S. bank to Citibank. Include account number on check or money order. No cash please.

AL ANI INC
25809 N MIDLOTHIAN
VLG HAWTHORN WOO, IL
DLR #21280750114

VISA ACCT#
0151
INV# 084149
REF# 91080 35 057
AUTH# 00 APPR# 533142
ID-PC#10    PUMP# 6
3 Premium   G 14.536
SELF
PRICE/GAL: $ 1.749
TAX:           $ 0.00
SALE TOTAL:  $ 25.42

10/17/00 08:41:49

---

EXPERIENCE THE
DIFFERENCE (R)
THANK YOU

---

SOUTHGATE CAFE
665 FOREST AVE
LAKE FOREST, IL 60045
(708) 234-8800
15222

MON, OCT 09, 2000 03:25P

*** CREDIT CARD ***

ARD NO:      4271382552130151
XP DATE:     1200
ARD TYPE:    VI -CREDIT
R TYPE:      SALE
P CODE:      986873
ERVER ID:    5960
C NO:        C042
CKET NUMBER: 5960

UBTOTAL:    $   29.50

IP:         $    4.50

OTAL:       $   34.00

GN

AMOROSO II/LOUIS A
THANK YOU!!!
COME AGAIN!!!

---

thank YOU

O'Hare International Airport

Parking Facility  Lots A, B & C

P.O.Box 66179, Chicago, Il, 60666-0179

tel: (773) 686-7532

## SALES VOUCHER/RECEIPT

DAILY REPT - C lot
TRANSACTION NUMBER
ENTRY TIME/DATE                601308473
PAYMENT TIME/DATE         17:28  10-22-00
PAY MACHINE              23:58  10-23-00
LICENSE:                         CE36
OPERATOR                    IL R611989
FEE                               349
                              $36.00
VISA                  4271382552130151
Expiry Date                     12/00
Pay m/c Transaction Ref:     3600085472
Authorization Code            762145
SPS Terminal              CHGO019801
SPS Time                 1023002355
SPS Reference                   2198
TOTAL                      $36.00

---

FAMOUS DAVE'S
Vernon Hills, IL
Date:      Oct06'00 01:23PM
Card Type: Visa/MC
Acct #:    4271382552130151
Exp Date:  12/00
Auth Code: 858970
Check:     3606
Table:     64/1
Server:    419 JOHN
VSCa: Auth Driver
     LOUIS A AMOROSO II

Subtotal:      171.40
Tip: _____

Total: _____  201.40

_____
Customer Signature

---

Welcome To Shell
Rand And Lake Cook
Deer Park, Il.

RAND LAKE COOK SHEL
20034 RAND RD
PALATINE
DLR# 21220180133

DATE: 10/26/00
LOUIS A AMOROSO II
VISA          ACCT#
XXXX XXXX XXXX 0151

RCPT# 8-0650
INV# 073210
REF# 91060 20 043
AUTH# 00 APPR 52405

PUMP# 6
PREMIUM        14.566
SELF
PRICE/GAL      $1.83

FUEL TOTAL     $26.7

TOTAL          $26.7

Thank You
Bob Juckniess
847-902-0095

# Barrington Travel Inc.

237 East Main Street • Barrington, Illinois 60010 • (847) 381-3495 • (800) 228-3495 • Fax (847) 381-6590

SALES PERSON: 70
CUSTOMER NBR: 0010001430

ITINERARY/INVOICE NO. 0166021
UDJSRB

DATE: 20 OCT 0
PAGE: 01

TO: MERCHANT DIRECT
55 ALBRECHT DR
LAKE BLUFF, IL 60044

FOR: AMOROSO/LOUIS

26 OCT 00 - THURSDAY
AIR   AMERICAN AIRLINES   FLT 1467   ECONOMY
      LV BUFFALO
      AR CHICAGO OHARE
      ARRIVES-TERMINAL 3
      AMOROSO/LOUIS

MCO

AIR TICKET
ELEC TKT

AMOROSO LOUIS
BILLED TO

SUB TOTAL
NET CC BILLING

TOTAL AMOUNT DUE

NON-REFUNDABLE EXCEL 75.00 FEE PLUS FARE DIFFERENTIAL APPLIES

# Barrington Travel Inc.

237 East Main Street • Barrington, Illinois 60010 • (847) 381-3495 • (800) 228-3495 • Fax (847) 381-6990

```
SALES PERSON: 70        ITINERARY/INVOICE NO. 0160043        DATE: 24 OCT 0
CUSTOMER NBR: 0010001430                      UDJSRB         PAGE: 01

        TO: MERCHANT DIRECT
            55 ALBRECHT DR
            LAKE BLUFF, IL 60044


FOR: AMOROSO/LOUIS


  30 OCT 00  -  MONDAY
     AIR     AMERICAN AIRLINES      FLT:2022    ECONOMY
             LV CHICAGO OHARE                   425P        EQP: MD-80
             DEPART: TERMINAL 3                              01HR 30MIN
             AR BUFFALO                         655P        NON-STOP
                                                            REF: UDJSRB
             AMOROSO/LOUIS      SEAT-24D    AA-4770236

  31 OCT 00  -  TUESDAY
     AIR     AMERICAN AIRLINES      FLT:1467    ECONOMY
             LV BUFFALO                         449P        EQP: BOEING 737-800
                                                            01HR 48MIN
             AR CHICAGO OHARE                   537P        NON-STOP
             ARRIVE: TERMINAL 3                              REF: UDJSRB
             AMOROSO/LOUIS      SEAT-25D    AA-4770236

  AIR TICKET      AA7123960416        AMOROSO LOUIS
                                      EXCHANGE AA7123960395
  ELEC TKT                            BILLED TO VI4271382552130151        229.50

                                      SUB TOTAL                          229.50
                                      NET CC BILLING                     229.50

                                      TOTAL AMOUNT DUE                     0.00

NON-REFUNDABLE/USD 75.00 FEE PLUS FARE DIFFERENTIAL APPLIES
FULL FARE COACH ON THIS TRIP WOULD HAVE BEEN 1128.00 :
ELECTRONIC TICKET IESUSED
```

This Invoice Represents an Immediate Transfer of Funds from our Agency to
the Participating Carriers upon Issuance of Tickets
Your Prompt Remittance will be appreciated

DEPOSITED RETURN NOTICE

1

00096                                                11-20-00   PAGE  1
LASALLE BANK N.A.
135 S. LASALLE STREET                    DEPOSITING   OUNT:      5841969
CHICAGO, IL  60603

PLEASE BE ADVISED THAT THE CHECK(S) LISTED BELOW WHICH WERE DEPOSITED TO YOUR ACCOUNT
HAVE BEEN RETURNED FOR REASONS CITED BELOW.  PLEASE NOTE, ITEMS WHICH ARE MARKED WITH
AN (*) HAVE BEEN REDEPOSITED TO YOUR ACCOUNT.  YOUR ACCOUNT      5841969 HAS BEEN
CHARGED FOR THE RETURNED CHECKS.  IF YOU HAVE QUESTIONS, CALL (312)904-7222 .

                                  AMOUNT OF CHECK(S) RETURNED        4,869.32
                                  TOTAL CHARGEBACK FEE(S)                5.00
LOUIS A AMOROSO II                NUMBER OF ITEMS               1
OR BARBARA J AMOROSO
55 ALBRECHT DR
LAKE BLUFF IL  60044              AMOUNT OF CHECK(S) REDEPOSITED       0.00
                                  TOTAL REDEPOSIT FEE(S)               0.00
                                  NUMBER OF ITEMS               0

                                            11-20-00   PAGE  2
                                  CHARGING ACCOUNT:      5841969

                    DETAILED LISTING OF CHECKS

      AMOUNT          REASON          DATE   REF#
-----------------    ---------------  ----   --------
        4,869.32     REFER TO CHECK          45804628

---

**DRINKS.COM, INC.**
55 ALBRECHT DRIVE
LAKE BLUFF, IL 60044
(847) 482-8200

LASALLE NATIONAL BANK
2-50/710

002105

11/10/2000

PAY
TO THE
ORDER OF   Louis Amoroso                                    $ 4,869.32

                                                            DOLLAR

*** FOUR THOUSAND EIGHT HUNDRED SIXTY-NINE  and 32/100 ***

        Louis Amoroso
        12 Lakeside Drive
        Barrington IL  60010

MEMO                                              AUTHORIZED SIGNATURE

REFER TO MAKER

⑆021056⑆ ⑇071000505⑇ 58⑆0012301⑆9⑆              ⑈000004869

Employee Name:   Louis A. Amoroso II
Expense report date:   6/01 thru 11/08/00
Credit Card:   Citibank Platinum

| Amount | Airfare | Meals | Entertainment | Entertainment Detail | Office Supplies | O'Hare Parking | Finance Charges | Other |
|---|---|---|---|---|---|---|---|---|
| ╳╳Oct | | | | | | | | |
| 14-Aug | 1999.30 | | | | | | | |
| 11-Oct | | 33.92 | | | | | | |
| 13-Oct | | | | Lunch w/DRINKS.com employees debriefing company's status. 110.45 / NY Dinner w/Larry Gerhard and Louis Amoroso II | | | | |
| 23-Oct | | | | 106.26 discussed merger. | | 45.00 | | |
| 28-Oct | 125.00 | | | | | | | |
| 28-Oct | 30.00 | | | | | | | |
| 31-Oct | | | | | | 22.81 | | |
| 3-Nov | | | | | | | 1001.57 | |
| 8-Nov | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 368029 | 2154.30 | 33.92 | 216.71 | | ╳╳╳ | 67.81 | 1001.57 | 0 |

Date received: 12/6/02
Acct number: 10 0000 31 63
Doc number:
Date Paid:
Check #:

3474.31

Visit www.citibankcards.com

**citi** Citibank

3003289859202999991001571106l

Your Account Number
4128 0032 8985 9202

| Payment Must Be Received By | Your Total Balance | Minimum Payment Due | Please Enter Amount of Payment Enclosed |
|---|---|---|---|
| DEC 04 2000 | $40673.64 | $1001.57 | |

244354N VI 00 16A0865 BR2011051

LOUIS A AMOROSO II
12 LAKESIDE LANE
NORTH BARRINGTON    IL  60010-6954

CITIBANK AADVANTAGE
P.O. BOX 6406
THE LAKES, NV
USA 88901-6406

( )_____    ( )_____
New Home Phone        New Business Phone
Please print change of address or phone number above.

# Platinum Select℠ A'Advantage® Card

Account Number AAdvantage is a registered trademark of American Airlines, Inc.
4128 0032 8985 9202
Payment must be received by 1:00 pm local time on 12/04/2000

For Customer Service, call or write
1-888-528-8980

BOX 6000
THE LAKES, NV
89163-6000

To report billing errors, write
to this address; calling will
not preserve your rights

| Statement/Closing Date | Total Credit Line | Cash Advance Limit | New Balance | Available Credit Line | Available Cash Limit |
|---|---|---|---|---|---|
| 11/08/2000 | $45000 | $23000 | $40673.64 | $4326 | $4326 |

| Sale Date | Post Date | Reference Number | Activity Since Last Statement | | Amount |
|---|---|---|---|---|---|
| | 11/03 | 23678128 | PAYMENT THANK YOU | | -818.00 |
| 6/01 | 10/10 | RN886W00 | CDW VH SHOWROOM | VERNON HILLS IL | 15,000.00 |
| 8/14 | 10/10 | 59010001 | RC AMERICAN AIR0017110536039 BARRINGTON | | 1,999.30 |
| 10/11 | 10/11 | RR4GMFQD | MORTON'S OF CHICAGO | ROSEMONT    IL | 33.92 |
| 10/13 | 10/13 | 4L3S1RF6 | FERENTINO'S W 71960025 | LAKE FOREST  IL | 110.45 |
| 10/23 | 10/23 | X065CRH3 | RUBY FOOS | NEW YORK    NY | 106.26 |
| 10/28 | 10/28 | Q5H3HISQ | O'HARE PARKNG 00101410 | CHICAGO     IL | -45.00 |
| 10/28 | 10/28 | QZF2WGNH | UNITED AIR 0164079658334 PORTLAND | OR | -125.00 |
| 10/31 | 10/31 | D875HISQ | O'HARE PARKNG 00101410 | CHICAGO     IL | 30.00 |
| 11/03 | 11/03 | 52JLKY23 | MOBIL    08896573 | HIGHLD P    IL | 22.81 |

| | | | | | |
|---|---|---|---|---|---|
| 11/08 | | PURCHASES×FINANCE CHARGE×PERIODIC RATE | | | 1,001.57 |

| | Previous Balance | (+)Purchases & Advances | (-) Payments | (-) Credits | (+) Finance Charge | (+) Late Charges | (=)New Balance | | |
|---|---|---|---|---|---|---|---|---|---|
| Purchases | | | | | | | | Purchases Minimum Due | 1001.57 |
| Advances | | | | | | | | Advances Minimum Due | |
| | | | | | | | | Amount Over Credit Line | |
| | | | | | | | | Fees | |
| | | | | | | | | Past Due | |
| Purchases | 39270.41 | 18373.97 | 17972.31 | | 1001.57 | | 40673.64 | | |
| Advances | | | | | | | | | |
| Total | 39270.41 | 18373.97 | 17972.31 | | 1001.57 | | 40673.64 | Minimum Amount Due | 1001.57 |

| Rate Summary | Purchases | Advances |
|---|---|---|
| Number of days this Billing Period  30 | | |
| Calculation Method | Daily | Daily |
| Periodic Rate | .06709% | .06709% |
| Nominal Annual Percentage Rate | 24.490% | 24.490% |
| Annual Percentage Rate | 24.490% | 24.490% |
| Balance Subject to Finance Charge | 49762.46 | |

SEND PAYMENTS TO: CITIBANK AADVANTAGE P.O. BOX 6406 THE LAKES, NV 88901-6406        244354N
PLEASE FOLLOW PAYMENT INSTRUCTIONS ON REVERSE SIDE.

Make check or money order payable in U.S. dollars on a U.S. bank to Citibank. Include account number on check or money order. No cash please.

Visit www.citibankcards.com

citi
Citibank

3003289859202989999110015711061

Your Account Number

| Payment Must Be Received By | Your Total Balance | Minimum Payment Due | Please Enter Amount Of Payment Enclosed |
|---|---|---|---|

244354N VI  00 16A0865 BR2011051

LOUIS A AMOROSO II

# Platinum Select℠ AAdvantage® Card

Account Number AAdvantage is a registered trademark of American Airlines, Inc.
4128 0032 8985 9202

For Customer Service, call or write
1-888-528-8980

BOX 6000
THE LAKES, NV
89163-6000

To report billing errors, write
to this address; calling will
not preserve your rights

| Statement/Closing Date | Total Credit Line | Cash Advance Limit | New Balance | Available Credit Line | Available Cash Limit |
|---|---|---|---|---|---|
| 11/08/2000 | $45000 | $23000 | $40673.64 | $4326 | $4326 |

| Trans Date | Post Date | Reference Number | Activity Since Last Statement | Amount |
|---|---|---|---|---|

```
            *** AADVANTAGE MILES UPDATE ***
      Regular Miles Accumulated This Month:        1,225
      Miles Reported to American Airlines:         1,225

      Earn 500 miles with a Gourmet Purchase from
      Mrs. Beasley's of $49.95 + shipping. Try our NEW
      Cookie Village, featuring our latest cookie recipes.
      Visit www.mrsbeasleys.com or call 1-800-710-7742.
      Not Valid with Any Other Offer. Expires 11/30/00.
```

| | Previous Balance | (+)Purchases & Advances | (-) Payments | (-) Credits | (+) Finance Charge | (+) Late Charges | (=)New Balance | | |
|---|---|---|---|---|---|---|---|---|---|
| Purchases | 39270.41 | 18373.97 | 17972.31 | | 1001.57 | | 40673.64 | Purchases Minimum Due | 1001.57 |
| Advances | | | | | | | | Advances Minimum Due | |
| | | | | | | | | Amount Over Credit Line | |
| Total | 39270.41 | 18373.97 | 17972.31 | | 1001.57 | | 40673.64 | Fees | |
| | | | | | | | | Past Due | |
| | | | | | | | | Minimum Amount Due | 1001.57 |

Account Summary                                        Amount Due

| Rate Summary Number of days this Billing Period 30 | Purchases | Advances |
|---|---|---|
| Calculation Method | Daily | Daily |
| Periodic Rate | .06709% | .06709% |
| Nominal Annual Percentage Rate | 24.490% | 24.490% |
| Annual Percentage Rate | 24.490% | 24.490% |
| Balance Subject to Finance Charge | 49762.46 | |

SEND PAYMENTS TO: CITIBANK AADVANTAGE P.O. BOX 6406 THE LAKES, NV 88901-6406          244354H
PLEASE FOLLOW PAYMENT INSTRUCTIONS ON REVERSE SIDE.

Make check or money order payable in U.S. dollars on a U.S. bank to Citibank. Include account number on check or money order. No cash please.



- Payment Receipt -

```
Sale
XXXXXXXXXXXX9202
Auth. # 064865
Inv. # AAN  2635
3896573 Date 11/03/00
MOBILOIL 05BAY
HIGHLD P IL
Pump # 4
Gallons ..... 12.750
Price/Gal ...$  1.789
Fuel Sale ...$ 22.81
```

- THANK YOU -

MORTONS OF ROSEMONT
ROSEMONT, IL.
3067150000094001          01
                   APPROVAL
OCT 11, 00               422788

LOUIS A AMOROSO II
4128003289859202
VISA                       02/04

      SALE              0001
ROC #             TERMINAL #
447310              24003557

FOOD AND BEVERAGE

BASE AMOUNT              $28.92

TIP AMOUNT               5.00

TOTAL                   23.92

X _____

I AGREE TO PAY ABOVE TOTAL AMOUNT
ACCORDING TO CARD ISSUER AGREEMENT
(MERCHANT AGREEMENT IF CREDIT VOUCHER)
TOP COPY-MERCHANT    BOTTOM COPY-CUSTOMER

---

RUBY FOO
NEW YORK, NY
310981200611001 02
                 APPROVAL
OCT 23, 00          229600

LOUIS A AMOROSO II
4128003289859202
VISA                02/04

      SALE          0799
ROC #         TERMINAL #
294447         22000956

FOOD AND BEVERAGE

BASE AMOUNT       $91.26

TIP AMOUNT        15.00

TOTAL             106.26

I AGREE TO PAY ABOVE TOTAL AMOUNT
ACCORDING TO CARD ISSUER AGREEMENT
(MERCHANT AGREEMENT IF CREDIT VOUCHER)
TOP COPY-MERCHANT   BOTTOM COPY-CUSTOMER

---

FIORENTINO'S WEST
325 S WAUKEGAN RD
LAKE FOREST, IL 60045

TERMINAL I.D.:              5012

MERCHANT #:        60110109198495..

VISA
4128003289859202
C.P.S.E:           EXP.: 04/02
BATCH: 00795.      INVOICE: 38495..
DATE: OCT 15, 00      TIME: 11:30
                   AUTH NO: 108495

BASE              $108.45
TIP              $110.45

TOTAL

I AGREE TO PAY ABOVE TOTAL AMOUNT
ACCORDING TO CARD ISSUER AGREEMENT
(MERCHANT AGREEMENT IF CREDIT VOUCHER)

JS-44
(Rev. 12/96)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

JUDGE KOCORAS

Louis Amoroso

**DEFENDANTS** 02C 1453

See Attachment

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Lake
(EXCEPT IN U.S. PLAINTIFF CASES)

MAGISTRATE JUDGE NOLAN

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Norfolk
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

O'Rourke McCloskey & Moody
Brian M. Dougherty
161 N. Clark Street, Suite 2230, Chicago, IL 60601

ATTORNEYS (IF KNOWN)

DOCKETED

FEB 28 2002

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | 820 ILCS 115/1 et seq. |
| | | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. sec. 1332(a) and 820 ILCS 115/1 et seq (Wage Payment and Collection Act). Action for payment of final compensation under the Act.

**VII. REQUESTED IN COMPLAINT**

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $** in excess of $82,000.00

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☐ YES ☒ NO

**VIII.** This case ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE 2/27/02

SIGNATURE OF ATTORNEY OF RECORD
Brian M. Dougherty

**Attachment**

**Defendants**

1.    CRESCENT PRIVATE CAPITAL, L.P., a
Delaware limited partnership,

2.    NANCY AMER

3.    HUGH O'DONNELL,

4.    WASSERSTEIN ADELSON VENTURES, L.P, a
limited partnership

5.    TOWNSEND ZIEBOLD

6.    TOM HUANG

7.    SWANDER PACE CAPITAL, LLC, a
Delaware limited liability company

8.    BILL PACE

9.    SCOTT SELLERS

10.    THE CIT GROUP/VENTURE
CAPITAL, INC., n/k/a TYCO CAPITOL, a
corporation

11.    ED BURNS

12.    MARK VANDER VEEN

NOTE: When the print dialogue
box appears, be sure to
uncheck the Annotations option.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

Double click on question
mark for appearance form
instructions

In the Matter of

Louis Amoroso

JUDGE KOCORAS

v.

Case Number: **02C 1453**

Crescent Private Capital, L.P., et al.

MAGISTRATE JUDGE NOLAN

DOCKETED
FEB 2 8 2002

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Louis Amoroso

| (A) | (B) |
|-----|-----|
| SIGNATURE | SIGNATURE |
| NAME Michael J. O'Rourke | NAME Limo T. Cherian |
| FIRM O'Rourke McCloskey & Moody | FIRM O'Rourke McCloskey & Moody |
| STREET ADDRESS 161 N. Clark Street, Suite 2230 | STREET ADDRESS 161 N. Clark Street, Suite 2230 |
| CITY/STATE/ZIP Chicago IL 60601 | CITY/STATE/ZIP Chicago IL 60601 |
| TELEPHONE NUMBER (312) 849-2020 | TELEPHONE NUMBER (312) 849-2020 |
| IDENTIFICATION NUMBER 211 8467 | IDENTIFICATION NUMBER 621 745 |
| MEMBER OF TRIAL BAR? YES ✓ NO | MEMBER OF TRIAL BAR? YES ✓ NO |
| TRIAL ATTORNEY? YES ✓ NO | TRIAL ATTORNEY? YES ✓ NO |
| | DESIGNATED AS LOCAL COUNSEL? YES NO |

| (C) | (D) |
|-----|-----|
| SIGNATURE | SIGNATURE Brian M. Dougherty |
| NAME Joel L. Lipman | NAME Brian M. Dougherty |
| FIRM O'Rourke McCloskey & Moody | FIRM O'Rourke McCloskey & Moody |
| STREET ADDRESS 161 N. Clark Street, Suite 2230 | STREET ADDRESS 161 N. Clark Street, Suite 2230 |
| CITY/STATE/ZIP Chicago IL 60601 | CITY/STATE/ZIP Chicago IL 60601 |
| TELEPHONE NUMBER (312) 849-2020 | TELEPHONE NUMBER (312) 849-2020 |
| IDENTIFICATION NUMBER 6229726 | IDENTIFICATION NUMBER 6269661 |
| MEMBER OF TRIAL BAR? YES ✓ NO | MEMBER OF TRIAL BAR? YES NO ✓ |
| TRIAL ATTORNEY? YES ✓ NO | TRIAL ATTORNEY? YES ✓ NO |
| DESIGNATED AS LOCAL COUNSEL? YES NO | DESIGNATED AS LOCAL COUNSEL? YES NO |